## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT  DIVISION

—————————————————————x

| | |
|---|---|
| In re: | : |
| | :   CHAPTER 11 |
| SWIM SEVENTY, LLC, | : |
| | :   CASE NO.  17-50549 (JAM) |
| Debtor. | : |

—————————————————————x

**MOTION FOR ORDERS UNDER 11 U.S.C. §§ 105,  363 AND 365 AND FED. R. BANKR. P. 2002, 6004, AND 9014 (A) TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND INTERESTS; (B) APPROVING BIDDING PROCEDURES; (C) APPROVING BID PROTECTIONS; (D) APPROVING FORM AND MANNER OF NOTICE OF SAME; (E) SCHEDULING A HEARING TO CONSIDER FINAL APPROVAL OF SALE; AND (F) GRANTING RELATED RELIEF**

Swim Seventy, LLC,  the debtor and debtor-in-possession (the "Debtor"), hereby moves (the "Motion") for entry of orders (a) approving the sale of property free and clear of liens, claims and encumbrances and interests with respect to the sale of substantially all the Debtor's assets (the "Assets") as described herein to Connecticut Aquatics, LLC or its designee ("Proposed Purchaser") pursuant to the Asset Purchase Agreement by and between the Debtor and the Proposed Purchaser dated as of November 13, 2017 (the "Purchase Agreement") (a copy of which is attached hereto as Exhibit A) (the "Proposed Sale")[1]; (b) approving bidding procedures (the "Bidding Procedures"); (c) approving the Bid Protections as specified in the Purchase Agreement; (d) approving form and manner of notice of same; (e) scheduling a hearing (the "Sale Hearing") and objection deadline with respect to the Proposed Sale to approve the sale of the Assets free and clear of liens, claims and encumbrances and interests; and (f) granting related relief.  In support of this Motion, the Debtor respectfully represents as follows:

---

[1] This Motion summarizes many of the terms of the Purchase Agreement, but specific reference should be made to the Purchase Agreement, which shall control in the event of a conflict between the terms of this Motion and the Purchase Agreement.

Background

1.        On May 15, 2017, (the "Petition Date") the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Connecticut.

2.        The Debtor continues to own its properties and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.        The Debtor owns and operates a swim facility located at 8 and 11 Willard Road, Norwalk, Connecticut.

4.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Sections 105 and 363 of the Bankruptcy Code.

Proposed Sale of Assets

Determination to Sell Assets

5.        Prior to the Petition Date 8 Willard Road, LLC (the "8 Willard Landlord"), the landlord for the Debtor's premises located at 8 Willard Road, Norwalk, Connecticut (the "8 Willard Premises"), brought a summary proceeding seeking eviction of the Debtor from the 8 Willard Premises, which action was proceeding in the Connecticut Superior Court for the Judicial District of Stamford Norwalk, Housing Session at Norwalk as *8 Willard Road, LLC v. Swim Seventy LLC,* Case No. NWH-CV-17-6002277-S (the "Housing Court Action") as of the Petition Date.

6.        The Debtor was unable to reach a resolution of the Housing Court Action with the 8 Willard Landlord which would enable it to retain its lease for the 8 Willard Premises.  As a result, on September 14, 2017, a Judgment of Possession entered in the Housing Court Action in favor of the 8 Willard Landlord with a stay of execution until December 31, 2017.  Pursuant to that judgment, the

Debtor must vacate the 8 Willard Premises on or before December 31, 2017. This factor and the Debtor's inability to locate new investors into its business, led the Debtor to the conclusion that the sale of its business while it still maintained strong relationships with customers was in the best interest of the Debtor, its creditors, its employees, and its equity holders.

7.     The Debtor has determined that the offer it received from the Proposed Purchaser was the best offer available for its assets.  The parties have engaged in extensive negotiations regarding the terms of sale, culminating in the execution of the Purchase Agreement.  In addition, the Proposed Purchaser has successfully negotiated with the 8 Willard Landlord to allow it to occupy the 8 Willard Premises following consummation of the sale.

8.      The Purchase Agreement provides that the Assets are to be sold or otherwise transferred free and clear of all interests, including (i) all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, to attach to the proceeds of the sale, and (ii) all obligations and liabilities of the Debtor, except those expressively assumed pursuant to the Purchase Agreement.

9.     The Purchase Agreement further provides that, *inter alia*, the Proposed Purchaser will pay in cash to the Debtor $100,000.00 (the "Purchase Price").

10.     The Proposed Purchaser has delivered to Debtor's counsel the sum of $10,000 as a deposit pursuant to the terms of the Purchase Agreement.

<u>Bidding Procedures</u>

11.     By this Motion, the Debtor seeks approval of certain Bidding Procedures for a sale of the Assets.  After careful review of the options available to it, the Debtor has determined that the proposed structure for the Bidding Procedures is the one most likely to yield the maximum realizable value for these assets for the benefit of the Debtor's estate, creditors and other interested parties taking into account the necessity of an expedited sale process.

12.      The Purchase Agreement requires the Debtor to seek approval of the Bidding Procedures.  Accordingly, the Debtor requests that the Court approve the Bidding Procedures in order to preserve the benefits of the Purchase Agreement and facilitate the receipt and analysis of competing bids for the Assets.

13.      Participation Requirements.  Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process, each person (a "Potential Bidder") must deliver to Debtor's Counsel (i) a bid in the form of the Purchase Agreement marked to show the Potential Bidder's proposed changes (a "Topping Bid"); (ii) current financial statements of the Potential Bidder or other evidence of ability to consummate the transaction on the proposed terms; and (iii) a deposit in the amount of $10,000.00.  A "Qualified Bidder" is a Potential Bidder (a) that delivers the documents described above; (b) whose bid is not subject to any material and substantial due diligence conditions; and (c) that Debtor determines is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate a purchase of the Assets.

14.      The amount of the initial Topping Bid must equal or exceed the Purchase Price plus the initial bidding increment.  Thus, a Qualified Bidder must bid at least One Hundred Forty Thousand ($140,000.00) to make a Qualifying Bid.

15.      Shortly after a Potential Bidder delivers all of the materials required above, the Debtor shall determine, and shall notify a Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.

16.      Bid Deadline and Bid Requirements.  All bids must be submitted to counsel for the Debtor not later than 5:00 p.m. (EST) on **December 11, 2017** (the "**Bid Deadline**").  A bid is a letter from a Qualified Bidder stating that (i) the Qualified Bidder offers to purchase the assets sought to be acquired upon the terms and conditions set forth in a copy of the Purchase Agreement, marked to

show those amendments and modifications to said agreement sought by the Qualified Bidder; and (ii) the Qualified Bidder's offer is irrevocable until the conclusion of the Sale Hearing.

17.    A bid received from a Qualified Bidder that meets the above requirements is a "Qualified Bid."  For purposes of the Bidding Procedures, the Purchase Agreement is a Qualified Bid, the Proposed Purchaser is a Qualified Bidder.

18.    <u>Bidding Process and Auction</u>.  If there is at least one Qualified Bid for the Assets other than the Qualified Bid of the Proposed Purchaser, the Debtor may conduct an auction (the "Auction") with respect to the Assets.  The Auction shall proceed until the Debtor determines no higher or better bids shall be forthcoming.   All bidding at the Auction shall proceed in increments of cash consideration of at least $10,000.  The Auction shall take place at **10:00** a.m. on **December 12, 2017** at the offices of Debtor's counsel, Neubert, Pepe & Monteith, P.C. 195 Church Street, New Haven, Connecticut 06510.  Upon conclusion of the Auction or if no Auction is conducted because no Qualified Bid (other than that of the Proposed Purchaser) has been received, the Debtor shall submit the highest or otherwise best bid for approval by the Bankruptcy Court.

19.    <u>Acceptance of Qualified Bids</u>.  The Debtor is not obligated to formally accept any bid except the bid of the Proposed Purchaser as reflected in the Purchase Agreement, assuming the Proposed Purchaser's bid is the highest or otherwise best Qualified Bid for the Assets.  The Debtor has accepted a bid (other than the Proposed Purchaser's bid) only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  Upon Bankruptcy Court approval of a bid by a Qualified Bidder or the Proposed Purchaser (the "Successful Bidder") the deposits of all of the Qualified Bidders shall be returned.

20.    <u>Modifications</u>.  The Debtor may: (a) determine, in its business judgment, after consultation with its counsel and counsel for the Official Committee of Unsecured Creditors, which

Qualified Bid (other than the Qualified Bid of the Proposed Purchaser), if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid (other than the Bid of the Proposed Purchaser), any bid that, in the Debtor's discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate and its creditors. Without modifying the Purchase Agreement, the Bankruptcy Court, at or before the Sale Hearing, may impose such other terms and conditions as it may determine to be in the best interests of the Debtor's estate, its creditors and other parties in interest.

<u>Bid Protections</u>

21.     The Proposed Purchaser has expended considerable time, money and energy pursuing a transaction with the Debtor and has engaged in arms' length and good faith negotiations. The Purchase Agreement is the culmination of these efforts.

22.     If the Purchase Agreement is terminated as a result of the consummation of the sale of the Assets to a bidder other than the Proposed Purchaser, the Debtor has agreed, subject to Bankruptcy Court approval, to pay the Proposed Purchaser a Break Up Fee of Five Thousand ($5,000.00) and Expense Reimbursements not to exceed Twenty Five Thousand Dollars ($25,000.00). The Break Up Fee and Expense Reimbursements (collective, the "Bid Protections") shall constitute an administrative expenses under Sections 503(b) and 507(a)(1) of the Bankruptcy Code. If the Bankruptcy Court approves the sale of the Assets to a Qualified Bidder other than the Proposed Purchaser, the Bid Protections shall be paid to the Proposed Purchaser by the Debtor concurrently with the closing on the sale of the assets to the Qualified Purchaser approved by the Bankruptcy Court.

23.    The Bid Protections were a material inducement for, and condition of, the Proposed Purchaser's entry into the Purchase Agreement. The Debtor believes it is fair and reasonable in view of the analysis, due diligence investigation, and negotiation undertaken by the Proposed Purchaser in connection with the sale of the Assets.

24.    The Debtor has been advised that the Proposed Purchaser is unwilling to hold open its offer to purchase the Assets under the terms of the Purchase Agreement unless it is assured payment of the Bid Protections as provided above. Thus, absent authorization of the Bid Protections, the Debtor may lose the opportunity to obtain what it believes to be the best and highest, and perhaps the only, offer for the Assets.

25.    Payment of the Bid Protections will not diminish the Debtor's estate. The Debtor will not terminate the Purchase Agreement so as to incur the obligation to pay the Bid Protections, unless to accept another Qualified Bid. As set forth in the Bidding Procedures, for a bid to be a Qualified Bid with respect to the Assets the bid must provide, among other things, for cash consideration of at least $40,000 more than the sum of the cash consideration set forth in the Purchase Agreement.

26.    The Debtor accordingly requests that the Court authorize payment of the Bid Protections as defined in, and pursuant to the terms and conditions of, the provisions of the Purchase Agreement.

27.    In order to preserve the value of the Purchased Assets, it is critical that the Debtor close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor hereby requests that the Court waive the ten (10) day stay period provided under Rule 6006(d) F.R. Bankr. P. with regard to the unexpired lease to be assumed and assigned as part of the Sale.

<u>Hearing Date, Objection Dates and Provisions For Notice</u>

28.    <u>Dates</u>.  The Debtor must quickly consummate the Purchase Agreement in order to prevent its termination by the Proposed Purchaser.  In addition, the Debtor is subject to the Judgment entered in the Housing Court Action requiring it to vacate the Premises by the end of the year. Therefore, the Debtor requests, in accordance with Fed. R. Bankr. P. 2002(a)(2), that the Court (a) schedule the Sale Hearing at the earliest possible date, consistent with the Bankruptcy Rules, and (b) set as a deadline for objecting to the proposed sale of the Assets, a date that is on or before three (3) business days prior to the Sale Hearing Date.

29.    <u>Mailed Notices (363 Order)</u>.  The Debtor proposes that prior to the Sale Hearing Date it (or its agents) shall (a) serve a copy of this Bidding Procedures Order (including, as an exhibit, the Purchase Agreement) by first-class mail, postage prepaid, upon (i) the Office of the United States Trustee; (ii) counsel for Proposed Purchaser; (iii) the entities known to the Debtor to have expressed a serious interest in pursuing an acquisition transaction regarding the Debtor or its assets during the past twelve (12) months; (iv) all entities known to have or to have asserted, any lien, claim, encumbrance or other property interest in or upon the Assets; (v) the Debtor's 20 largest creditors; (vi) the Internal Revenue Service; (vii) all entities who have filed a notice of appearance and request for service of papers in this case; (viii) parties to leases; and (ix) such other entities as may be reasonably requested by Proposed Purchaser.

30.    <u>Publication</u>.  The Debtor proposes that at least ten-days prior to the Bid Deadline Date it (or its agents) will publish in The Norwalk Hour, and an online sale site, a notice of the proposed sale.

31.    <u>Objections</u>.  The Debtor further requests, pursuant to Fed. R. Bankr. P. 9014, that the Court order that objections, if any, to the Sale Motion or the relief requested therein, must: (a) be in

writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for United States Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, Connecticut, on or before three (3) business days prior to the Sale Hearing Date; and (d) be served so as to be received no later than 5:00 p.m. local time, on the same day, upon (i) bankruptcy counsel to the Debtor; (ii) counsel to the Proposed Purchaser; and (iii) the Office of the United States Trustee.

32.     The Debtor further requests, pursuant to Fed. R. Bankr. P. 9014, that the Court order that the failure of any objecting person or entity to file its objections timely and in accordance with the requirements of the Bidding Procedures Order will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion and the consummation and performance of the Purchase Agreement including the sale of assets free and clear of all interests, including all liens, claims, encumbrances.

## Relief Requested

33.     For the foregoing reasons, the Debtor respectfully requests entry of one or more orders (a) approving the sale of the Assets free and clear of liens, claims and encumbrances and interests; (b) approving Bidding Procedures; (c) Approving the Bid Protections; (d) approving form and manner of notice of same; (e) scheduling the Sale Hearing and objection deadline; and (f) granting related relief.

## Legal Basis

A.     Sale Pursuant to Section 363(b)(1)

1.     Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105.

2.      A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so.  See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986).  In re Lionel Corp., 722 F. 2d 1063 (2d Cir. 1983); In re Titusville Country Club, 128 B.R. 396 (W.D. Pa. 1991); In re Delaware & Hudson Railway Co., 124 B.R. 169, 176 (D. Del. 1991).  The Hudson Railway court, noting that under pre-Code law a pre-confirmation asset sale could be held only upon a showing of emergency or compelling circumstances, nonetheless found the "sound business purpose" standard applicable and, discussing the requirements of that test under McClung and Lionel, observed:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include:  the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value.

124 B.R. at 276.  The Hudson Railway court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith," Id.

3.      For the reasons set forth herein, the Debtor's immediate consummation of the sale of the Assets is the best way to preserve the value of the Assets.  The Debtor operates a swim facility in Norwalk, Connecticut.  Its continued provision of service to consumers is critical to the value of its business.  In light of the Judgment in the Housing Court Action, the Debtor's ability to continue to serve its customers and, thus, preserve its value, is materially impacted.     The smooth delivery of services without interruption is critical to Debtor's business operations and the value of the Assets.

10

4.      Not only will the Proposed Sale provide the greatest value to the Debtor's creditors in respect to the Assets, in its view, consummation of this transaction given the Debtor's current operating difficulties is the only currently available alternative to maximizing value for the creditors and thus will ultimately provide creditors with a better distribution upon their claims.

5.      The Debtor entered into the Purchase Agreement only after it determined that it had exhausted all reasonable business alternatives and that an immediate sale was the only alternative that would maximize the value of its Assets.  The entry of the Judgment in the Housing Court Action makes it impossible for Debtor to continue normal operations going forward.  all of these reasons, the Debtor recognized that a sale of its Assets was the Debtor's best course of action.

6.      Under the proposed Bidding Procedures Order, the Debtor will have provided adequate and reasonable notice of the Bid Procedures to interested parties well in advance of the hearing on this Sale Motion, thus leaving open the possibility of a higher or better offer for the assets being sold.  Accordingly, the Proposed Sale satisfies all of the requisite conditions for authorization under Section 363(b) of the Bankruptcy Code.

B.      Sale Free and Clear Pursuant to Section 363(f)

1.      Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

a.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

b.      such entity consents;

c.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.      such interest is in bona fide dispute; or

e.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all liens, claims and encumbrances.  All interests will be adequately protected by attachment to the net proceeds of the Proposed Sale.  The Debtor accordingly requests that the Assets be transferred to the Proposed Purchaser or to the other successful Qualified Bidder free and clear of all interests in such assets, including any liens, claims and encumbrances, with such liens interests to attach to the proceeds of the proposed Sale.

<u>Conclusion</u>

For all of the foregoing reasons, the Debtor respectfully request that this Court grant the relief requested herein.

Dated: November 14, 2017              THE DEBTOR,
      New Haven, Connecticut            SWIM SEVENTY, LLC


      By:___/s/Douglas S. Skalka_____
      Douglas S. Skalka (ct00616)
      NEUBERT, PEPE & MONTEITH, P.C.
      195 Church Street, 13th Floor
      New Haven, Connecticut  06510
      Tel. (203) 821-2000
      dskalka@npmlaw.com

# EXHIBIT
# A

EXECUTION VERSION

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is made as of this 13th day of November, 2017 (the "Effective Date"), by and between **SWIM SEVENTY, LLC**, a Connecticut limited liability company having a principal place of business at 8 Willard Road, Norwalk, Connecticut 06851 ("Seller"), and **CONNECTICUT AQUATICS, LLC**, or its designee ("Buyer"), a Connecticut limited liability company having a principal place of business at 137 Rowayton Avenue, Suite 400, Norwalk, Connecticut 06853 ("Buyer"). Seller and Buyer are sometimes referred to as the "Parties."

### RECITALS:

**WHEREAS**, Seller is engaged in the business of operating an aquatics facility (the "Business") at 8 and 11 Willard Road, Norwalk, Connecticut (the "Premises"); and

**WHEREAS**, on May 15, 2017 (the "Petition Date"), Seller filed a voluntary chapter 11 petition commencing cases in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), Case No. 17-50549 (JAM) (the "Chapter 11 Case"); and

**WHEREAS**, Buyer desires to purchase certain of the assets of Debtor related to or used by Debtor in connection with the Business and to assume selected executory contracts of Seller (the "Acquired Assets") (as more particularly defined in Section 1) related to the Business on an expedited basis, and Seller desires to sell, assign and transfer to Buyer the Acquired Assets on an expedited basis, as more particularly described herein and in accordance with Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code"); and

**WHEREAS**, the Parties agree that time is of the essence in connection with the sale of the Acquired Assets, and Buyer has stated that a rapid consummation of the sale of the Acquired Assets is essential; and

**WHEREAS**, the Acquired Assets will be sold pursuant to an order of the Bankruptcy Court approving such sale under Sections 105 and 363 of the Bankruptcy Code (the "Sale Order" defined in Section 6(b)(i)(B) herein).

**NOW, THEREFORE**, for and in consideration of the foregoing and their mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. **SALE OF ASSETS**

    (a)  Acquired Assets.  At the Closing (as defined in Section 3(a)), pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and on the terms and subject to the conditions precedent of this Agreement, Seller will sell, assign and transfer to Buyer, and Buyer will purchase, all of Seller's right, title and interest in and to the Acquired Assets.  The Acquired Assets include those assets set forth on the attached Schedule 1.1(a)(i). Excluded Assets.  The Seller is not selling, transferring or conveying to Buyer any asset that is not set forth on Schedule 1.1(a), or Seller Contract that is not set forth on Schedule 1.1(a)(ii).

    (b)  Non-Assumption of Liabilities.  the Buyer will not assume or have any responsibility with respect to any liability of Seller for Seller's customers.

{00043085.10 }

2.    **PURCHASE PRICE**

(a)    Purchase Price.  The aggregate purchase price for the Acquired Assets shall be: ONE HUNDRED THOUSAND DOLLARS (US $100,000.00) plus, if paid by Buyer, the amount of any administrative claims for wages asserted by the Seller's employees (except any Insiders, as defined under the Bankruptcy Code, of the Seller) in the Chapter 11 case as of the Closing (the "Purchase Price").  The Purchase Price is payable by wire transfer in immediately available funds to an account designated in writing by Seller to Buyer prior to the Closing as follows:

(i)    Deposit.  On the next Business Day following the date of this Agreement, Buyer shall deposit with Seller's attorney the sum of TEN THOUSAND and 00/100 DOLLARS ($10,000.00) (the "Deposit").  The Deposit shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of Seller or Buyer.  Seller's attorney shall not be required to hold the Deposit in an interest-bearing account. The Deposit shall be credited to the Purchase Price if the Closing Occurs, and otherwise distributed in accordance with the terms of this Agreement. For purposes of this Agreement, the term "Business Day" means any day other than Saturday, Sunday, or any other day on which banking institutions in State of Connecticut are authorized by law or executive action to close.

(ii)    Remaining Purchase Price Payable at Closing.  At the Closing, Buyer shall pay to Seller an amount equal to (i) the Purchase Price, minus (ii) the Deposit (the amount resulting from such calculation being referred to as the "Remaining Purchase Price"), in immediately available funds by wire transfer to Seller's account pursuant to instructions to be delivered to Buyer in advance of the Closing or as the Sale Order may otherwise direct.

(b)    Allocation of Purchase Price.  The Parties agree that the Purchase Price shall be allocated as set forth on Schedule 2(b) attached hereto and that the Parties will file all Federal and state income tax returns and all other forms and returns, including Internal Revenue Service Form 8594, in accordance with the allocation set forth on Schedule 2(b).

3.    **CLOSING**

(a)    Closing.  Subject to the fulfillment of all conditions precedent in this Agreement, the Closing shall take place by 5:00 p.m., Connecticut time on December 29, 2017 or any earlier date otherwise agreed to in writing by both Sellers and Buyer (the "Closing Date").  The Closing shall occur by means of a so-called "New York Style Closing" (i.e., meaning the concurrent transfer of interests and the payment of the Purchase Price).  All documents or other deliveries required to be made by Buyer or Seller at Closing, and all transactions required to be consummated concurrently with Closing, shall be deemed to have been delivered and to have been consummated simultaneously with all other transactions and all other deliveries, and no delivery shall be deemed to have been made, and no transaction shall be deemed to have been consummated, until all deliveries required by Buyer and Seller shall have been made, and all concurrent or other transactions shall have been consummated.

(b)    Deliverables.  At the Closing, Seller shall deliver to Buyer (i) possession of all tangible assets comprising the Acquired Assets and (ii) a Bill of Sale substantially in the form attached hereto as Exhibit A duly executed by Seller.  In addition, for the period from the Closing through and including ninety (90) days from Closing, Seller shall execute and deliver, without further consideration, such further instruments of transfer and take such other commercially reasonable action as Buyer may require to transfer to Buyer, or perfect the transfer to Buyer of, any of the Acquired Assets.

{00043085.10 }                                    2

(c)     At the Closing, Buyer shall deliver to Seller (i) the Purchase Price in accordance with Section 2(b), and (ii) the Bill of Sale.

## 4.     REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents, warrants and covenants to Buyer as follows:

(i)     <u>Authorization</u>.  Seller is a limited liability company, duly organized and validly existing under the laws of the State of Connecticut. The execution and delivery by Seller of this Agreement to Buyer and the sale contemplated hereby has been duly and validly authorized by any and all necessary action on the part of Seller and its members, and Seller shall deliver to Buyer, at or prior to the execution hereof, copies, certified by Seller's managing member, of the resolutions of the Seller's members granting such authority. Subject to Bankruptcy Court approval, this Agreement and the documents executed pursuant to this Agreement (collectively the "<u>Definitive Documents</u>") to which it is a party have been duly and validly executed by Seller and, assuming due authorization, execution and delivery by the Seller of the Definitive Documents to which it is a party, such Definitive Documents will constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their terms, upon the entry of the Sale Order (as defined in Section 6(c)(ii)(B)).

(ii)     <u>No Conflict</u>.  Except for (i) orders, approvals or authorizations of the Bankruptcy Court and (ii) for consents, orders, approvals, authorizations, or registrations, which, if not obtained, would not, individually or in the aggregate, have a material adverse effect on the Business, Seller has full power, right and authority to sell and transfer the Acquired Assets to Buyer and the execution, delivery and performance of this Agreement by Seller and compliance by Seller with the terms hereof will not (x) conflict with any provision of the organizational  documents of Seller; (y) result in a default (or give rise to any termination, cancellation or acceleration) under any of the terms, conditions or provisions of any agreement to which Seller is a party or by which it is bound, except for such defaults (or rights of termination, cancellation or acceleration) as to requisite waivers or consents have been obtained; or (z) violate any statute, law, rule, regulation, order, writ, injunction or decree of any governmental authority or create a lien, encumbrance, security interest or claim upon any of the assets of Seller.

(iii)     <u>Title</u>.  At the Closing Buyer will obtain, good and marketable title to the Acquired Assets, free and clear of all liens, claims, interests, encumbrances and security interests of any kind or nature whatsoever pursuant to an order of the Bankruptcy Court and Sections 105, 363 and 365 of the Bankruptcy Code.

(iv)     <u>Litigation</u>.  Except as set forth on <u>Schedule 4(d)</u>, there is no claim, judgment, litigation or proceeding in existence or pending at present, or to the knowledge of Seller threatened, against or relating to the Acquired Assets or the Business which would affect or encumber the Acquired Assets; no replevins, attachments, executions or tax assessments or liens are in force against Seller or the Acquired Assets; and Seller does not know, or have reasonable grounds to know, of any basis for any such action, or of any governmental investigation relative to Seller, the Acquired Assets or the Business.

(v)     <u>Broker</u>.  No broker has been engaged by Seller in connection with the transaction contemplated by this Agreement and no brokerage fees will be payable by Seller to any party as the result of the consummation of such transaction.

(vi)     <u>Compliance with Law</u>.  To Seller's knowledge, Seller has filed with the appropriate governmental authorities all material applications, notifications and other documents and has been issued and is in compliance with all material requirements for all laws, regulations, permits, certificates, licenses, approvals and other authorizations required to operate the Business, except where

the failure to do so would not have a material adverse effect on the Business.  Seller is in material compliance with each (and has not received any claim or notice that the Business is not in compliance with or that it is in violation of any) law to which the Business is subject (including all record keeping and reporting requirements thereof); and, to the Seller's knowledge, no prior actions of the Seller in violation of any law or regulation will result in liability to the Buyer as a result of the transactions contemplated by this Agreement.

(vii)    <u>Governmental Notices</u>.  Other than claims filed in the Chapter 11 Case, Seller has not received from any governmental authority or third party any material request for information, notice of claim, demand letter, or other notification in connection with the conduct of the Business or the use of the Acquired Assets.

(viii)    <u>Business Information</u>.  In connection with this transaction, the Seller has made or will make available to the Buyer all books, records, correspondence, customer lists, and technical and financial information requested by the Buyer and relating to the Acquired Assets as of the date of the Closing (the "<u>Business Information</u>").

## 5.    **REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer hereby represents, warrants and covenants to Seller that Buyer is a limited liability company, duly organized and validly existing under the laws of the State of Connecticut.  The execution and delivery by Buyer of this Agreement to Seller and the sale contemplated hereby has been duly and validly authorized by any and all necessary action on the part of Buyer and its members, and Buyer shall deliver to Seller, at or prior to the execution hereof, copies, certified by Buyer's managing member, of the resolutions of the Buyer's members granting such authority.  Subject to Bankruptcy Court approval, Definitive Documents to which it is a party have been duly and validly executed by Buyer and, assuming due authorization, execution and delivery by the Buyer of the Definitive Documents to which it is a party, such Definitive Documents will constitute legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with their terms, upon the entry of the Sale Order.

## 6.    **COVENANTS**

(a)    <u>Access and Investigation</u>.  Between the date hereof and the Closing, Seller grants to Buyer and to its duly authorized representatives including, but not limited to, its employees, accountants and counsel reasonable access to (i) financial information concerning the Acquired Assets and or the Business (other than pricing information, customer lists or personnel files) as Buyer may reasonably request and (ii) reasonable access, during normal business hours, to the Acquired Assets and to present management employees of the Business who have significant information regarding the Acquired Assets and Business, and releases all such employees from any obligations of confidentiality or non-disclosure with regard to disclosures made by such employees to the Buyer for the purpose of evaluating the transactions contemplated by this Agreement.

(b)    <u>Notice of Sale</u>.  Seller will mail notice of the sale, which notice will comply and be served in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, any applicable local bankruptcy rules, and any applicable order of the Bankruptcy Court, to parties who assert any interest, lien, encumbrance or claim in or against the Acquired Assets, any non-debtor party to a contract that is being assigned hereunder, and any committee of unsecured creditors appointed in the Chapter 11 Case.

(c)    Bankruptcy Court Approvals.

(i)    Seller confirms that its negotiation of this Agreement with Buyer is critical to its obtaining the highest and best price for its assets, and that without Buyer's commitment of substantial time and expense to the process, Seller would have to employ a less orderly process for the sale of its assets and therefore risk attracting lower prices. Seller acknowledges that Buyer would not have invested the time and incurred the expense of negotiating and documenting the transaction if it were not entitled to a break-up fee as described below. Notwithstanding anything in this Agreement to the contrary, if Buyer is not the successful bidder for the Acquired Assets because a bid or bids higher and better than the Purchase Price is approved by the Bankruptcy Court, Buyer shall be entitled to a break-up fee of Five Thousand and 00/00 Dollars ($5,000.00) (the "Break-up Fee"), provided this Agreement has not been terminated by Seller under Section 11(a)(v) at that time. The Break-Up fee shall be payable to Buyer at the closing of the sale of the Acquired Assets to such alternate bidder.

(ii)    As promptly as possible after the date hereof, Seller will file and serve motions pursuant to Bankruptcy Code Sections 105, 363, and 365, as applicable, in a form reasonably approved by counsel for Buyer:

(A)    seeking entry of an order (on an expedited basis) substantially in the form attached hereto as Exhibit C (the "Procedures Order"), approving among other things the payment of the Break-Up Fee as an administrative priority claim under Bankruptcy Code Sections 503(b) and 507(a), approving procedures for the sale of the Acquired Assets (including an overbid amount of US $15,000 over the Purchase Price, an incremental bid amount of US $10,000 and matching bid provisions), and setting dates for the auction sale of the Acquired Assets no later than December 22, 2017 (the "Auction Hearing Date"), and the hearing on the sale of the Acquired Assets no later than December 22, 2017 (the "Sale Hearing Date"); and

(B)    seeking entry of an order approving the sale of the Acquired Assets (the "Sale Order"), which, among other things, (i) authorizes Seller to sell, transfer and assign the Acquired Assets to Buyer, on an expedited basis, pursuant to this Agreement and Bankruptcy Code Sections 105 and 363, as applicable, free and clear of liens, claims, interests, encumbrances and security interests of any nature or kind, (ii) determines that Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that the Buyer has acted in good faith, is a bona fide purchaser for value, the Purchase Price is fair and reasonable, and the sale of the Acquired Assets is free and clear of all liens, claims, interests, and encumbrances; (iii) is in all respects in a form reasonably acceptable to Counsel for Buyer; and (vi) provides that the fourteen (14) day periods provided for in Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) are waived.

(d)    Books and Records.  After the Closing, Buyer shall allow Seller and any of its counsel, representatives, accountants and auditors (collectively, the "Seller's Representatives") reasonable access to all business records and files of the Seller or the Business that are transferred solely to Buyer in connection herewith, which are reasonably required by such Seller's Representatives in order to complete the Bankruptcy Case or for tax or other valid business purposes, during regular business hours and upon reasonable notice to Buyer. The Seller's Representatives shall have the right to make copies of any such records and files; provided, however, that any such access or copying shall be had or done in such a manner so as not to unreasonably interfere with the normal conduct of Buyer's business or operations.

(e)    Additional Matters.  Subject to the terms and conditions herein, except as provided by the Bankruptcy Code, the Bankruptcy Rules or any other orders entered or approvals or authorizations granted by the Bankruptcy Court in the Bankruptcy Case, each of the parties hereto agrees to use all commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be

done, all things necessary, proper or advisable, including under applicable laws and regulations, to consummate and make effective the transactions contemplated by this Agreement, including using all commercially reasonable efforts to obtain all necessary waivers, consents and approvals required under this Agreement.

(f)     <u>Preservation of Acquired Assets</u>.  Seller will take all prudent actions, at Seller's cost, to safeguard, preserve and maintain the integrity of the Acquired Assets pending Closing.

(g)     <u>Seller's Good Faith Cooperation</u>.  Seller shall reasonably cooperate in good faith to assist Buyer in preserving and protecting the Acquired Assets and the Business during the ninety (90) day transition period following the Closing, consistent with the obligations of both parties set forth herein.

7.     **CONFIDENTIALITY**

The Buyer agrees that prior to the Closing and, in the event that the Buyer is not the successful bidder, after the termination of this Agreement, it will not disclose confidential information with respect to the Seller, the Acquired Assets or the Business, for any purpose or reason whatsoever (except to authorized representatives of the Buyer and to counsel and other advisers, provided that such advisors (other than counsel) agree to the confidentiality provisions of this Section 7), unless (i) such information becomes known to the public generally through no fault of the Buyer, (ii) disclosure is required by law or the order of any governmental or regulatory authority under color of law, or (iii) the Buyer reasonably believes that such disclosure is required in connection with the defense of a lawsuit or for certification or state licensure purposes; provided, that prior to disclosing any information pursuant to clauses (ii) or (iii) above, the Buyer shall, if possible, give prior written notice thereof to the Seller, its successors or assigns, and provide the Seller, its successors or assigns with the opportunity to contest such disclosure.

8.     **CONDITIONS TO BUYER'S OBLIGATION**

The obligation of Buyer to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of all of the following conditions (all or any of which may be waived, in whole or in part, by the Buyer):

(a)     The Procedures Order has been entered by the Bankruptcy Court and is no longer subject to stay, modification, or appeal and has become a final order.

(b)     The Sale Order, in all respects in a form reasonably acceptable to counsel for Buyer, has been entered by the Bankruptcy Court and either (i) is no longer subject to stay, modification, or appeal and has become a final order; or (ii) provides that the fourteen (14) day periods provided for in Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) are waived.

(c)     Seller's representations and warranties contained in the Agreement are true and correct in all material respects as of the Closing Date as though such representations and warranties were made at such time.

(d)     Seller has, in all material respects, performed or complied with, as the case may be, all obligations, covenants and conditions required by this Agreement to be performed or complied with by it on or before the Closing Date.

(e)     Seller has executed and delivered the Bill of Sale and the Assignment.

(f)    There is no injunction or order of any court or government authority of competent jurisdiction prohibiting the transactions contemplated by this Agreement.

(g)    Upon consummation of the transactions contemplated by this Agreement, Buyer will have obtained good and marketable title in and to the Acquired Assets.

9.    **CONDITIONS TO SELLER'S OBLIGATIONS**

The obligation of Seller to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions (all or any of which may be waived, in whole or in part, by Seller):

(a)    The Sale Order has been entered by the Bankruptcy Court;

(b)    Buyer's representations and warranties contained in the Agreement are true and correct in all material respects as of the Closing Date as though such representations and warranties were made at such time;

(c)    Buyer has, in all material respects, performed or complied with, as the case may be, all obligations, covenants and conditions required by this Agreement to have been performed or complied with in all material respects on or before the Closing Date;

(d)    A duly authorized officer of Buyer has executed and delivered to Seller a certificate dated as of the Closing Date certifying as to (b) and (c) above; and

(e)    There is no injunction or order of any court or government authority of competent jurisdiction prohibiting the sale.

10.    **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

The representations and warranties of the parties hereto included or provided for herein, shall not survive the Closing and there shall be no liability in respect thereof, whether such liability has accrued prior to the Closing or after the Closing, on the part of either Party.

11.    **TERMINATION**

(a)    At any time before the consummation and completion of the Closing, this Agreement may be terminated (i) by mutual written agreement of the Parties; (ii) by Buyer if (A) the Procedures Order has not been entered by November 30, 2017, the Auction Hearing Date has not occurred on or before December 22, 2017, and the Sale Order has not been entered on or before December 22, 2017; (B) Closing has not occurred on or before December 29, 2017; and (C) any other condition set forth in Section 8 has become incapable of fulfillment or has not been satisfied on or before December 29, 2017; (iii) by Seller or Buyer if a bid or bids for the Acquired Assets by a purchaser other than Buyer is approved by the Bankruptcy Court; (iv) by Buyer in the event of any material breach by Seller of any of Seller's agreements contained herein and the failure of Seller to cure such breach within seven (7) calendar days after receipt of written notice from a Buyer requesting such breach to be cured; or (v) by Seller in the event of any material breach by Buyer of any of its agreements contained herein and the failure of Buyer to cure such breach within seven (7) calendar days after receipt of written notice from Seller requesting such breach to be cured.

(b)    <u>Effect of Termination</u>. If the Agreement is terminated pursuant to clause (i) of paragraph (a), all obligations of the Parties shall terminate without liability of any party to the other, and the Security Deposit (and any interest thereon) shall be returned to Buyer. If the Agreement is terminated pursuant to clauses (ii) or (iv) of paragraph (a), such termination is without prejudice to any other rights Buyer may have with respect to any breach of any representation, warranty or covenant by Seller, and Buyer shall be entitled to the immediate return of the Security Deposit (and any interest thereon). If the Agreement is terminated pursuant to clause (v) of paragraph (a), provided Seller is not in material breach of any of its agreements, representations or warranties contained herein, Seller shall be entitled to retain the Security Deposit as liquidated damages and as the Seller's sole and exclusive remedy for a breach by Buyer hereunder. If the Agreement is terminated pursuant to clause (iii) of paragraph (a), upon entry of an order of the Bankruptcy Court authorizing the payment of the Break-up Fee, the Buyer shall be entitled to the Break-Up Fee and return of the Security Deposit (with interest) and Buyer shall have no further liability whatsoever. Notwithstanding anything to the contrary in this Section 11(b), the provisions of Section 7(a) and 7(b) shall remain in full force.

THE TERMS AND CONDITIONS OF THIS AGREEMENT ARE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT.

## 12.    MISCELLANEOUS PROVISIONS

(a)    <u>Press Releases and Public Announcements</u>. No party shall issue any press release or make any public announcement relating to the subject matter of this Agreement without the prior written approval of the other party; provided, however, that any party may make any public disclosure it believes in good faith is required by applicable law as determined by a written opinion of counsel or any listing or trading agreement concerning its publicly-traded securities (in which case the disclosing party will use commercially reasonable efforts to advise the other party prior to making the disclosure).

(b)    <u>No Third-Party Beneficiaries</u>. This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

(c)    <u>Entire Agreement</u>. This Agreement and all other documents referred to herein constitute the entire agreement between the Parties and supersedes any prior understandings, agreements, or representations by or between the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.

(d)    <u>Succession and Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns, including, in the case of the Seller, a successor Chapter 7 trustee in the event such a trustee is appointed. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party.

(e)    <u>Counterparts; Facsimile Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. Any signature page delivered by facsimile or telecopy shall be binding to the same extent as an original signature page, with regard to any agreement subject to the terms hereof or any amendment thereto. Any party who delivers such a signature page agrees to later deliver an original counterpart to any party who requests it.

(f)    <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(g)    Notices. All notices, demands, requests, consents, approvals or other communications required or permitted to be given with respect to this Agreement shall be in writing and shall be delivered (charges prepaid, receipt confirmed or return receipt requested (if available)) by hand, by internationally and nationally recognized air courier service or by facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice.  Notice shall be deemed given and  effective (i) if delivered by hand or by internationally or nationally recognized air courier service, when delivered at the address specified in this Section 12(g) (or in accordance with the latest unrevoked written direction from such party) or (ii) if given by facsimile when such facsimile is transmitted to the facsimile number specified in this Section 12(g) (or in accordance with the latest unrevoked written direction from such party), provided, that, appropriate confirmation is received and that any such facsimile is promptly followed by delivery of written notice delivered by hand or by internationally or nationally recognized air courier service.


If to Seller:                                               Copy to:

**SWIM SEVENTY, LLC**                          NEUBERT, PEPE & MONTEITH, P.C.
8 Willard Road                                            195 Church Street
Norwalk, Connecticut 06851                       New Haven, CT  06510
Attention: Antoinette Phillips                      Attn: Douglas S. Skalka, Esq.
Tel.: (203)722-5823                                   Tel.: (203) 821-2000
Fax: _____              Fax: (203) 821-2008


If to Buyer:                                               Copy to:

Connecticut Aquatics, LLC                         Green & Sklarz LLC
137 Rowayton Avenue                               700 State Street, Suite 100
Suite 400                                                   New Haven, CT 06511
Norwalk, Connecticut 06853                       Attention:  Jeffrey M. Sklarz, Esq.
Attention: Russell Stidolph                         Tel.: (203) 285-8545 x101
Tel.: (203) 299-1400                                  Fax: (203) 823-4546
Fax: (866) 856-4916


(h)    Governing Law.  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Connecticut without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Connecticut.

(i)    Amendments and Waivers.  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Buyer and the Seller.  No waiver by any party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent occurrence.

(j)    Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

    (k)    <u>Expenses</u>. Except with respect to the Seller's payment of the Break Up Fee as provided for in Section 6(c)(i), each of the Buyer and the Seller will bear its own costs and expenses (including legal fees and expenses) incurred in connection with the Agreement and the transactions contemplated hereby.

    (l)    <u>Construction</u>. The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

    (m)    <u>Incorporation of Exhibits and Schedules</u>. The exhibits and schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

[<em>SIGNATURE PAGE FOLLOWS</em>]

IN WITNESS WHEREOF, the Parties hereto have executed this Asset Purchase Agreement as of the date first above written.

**SELLER**

SWIM SEVENTY, LLC
a Connecticut limited liability company

By: _____

Name: *Antoinett Phillips*

Title: *Managing Member*

**BUYER**

CONNECTICUT AQUATICS, LLC,
a Connecticut limited liability company

By: _____

Name: Russell Stidolph

Title:  Manager

**List of Schedules and Exhibits**

| | |
|---|---|
| Schedule 1.1(a)(i): | Assets |
| Schedule 2(b): | Allocation of Purchase Price |
| Schedule 4(d): | Litigation Matters |
| Exhibit A: | Bill of Sale |
| Exhibit B: | Procedures Order |

## SCHEDULE 1.1(a)(i)

**Assets**

- All gym equipment located at 8 Willard Road, Norwalk, Connecticut and referred to in the Seller's bankruptcy schedules filed with the Bankruptcy Court

- All pool equipment and supplies located at 8 Willard Road, Norwalk, Connecticut

- All office equipment and supplies, including computer equipment and software and communication systems equipment located at 8 Willard Road, Norwalk, Connecticut

- All of the Seller's customer and marketing information

### SCHEDULE 1.1(a)(ii)

**Assumed Seller Contracts**

NONE

## SCHEDULE 2(6)

**Allocation of Purchase Price**

- Personal Property, including all gym equipment, pool equipment       $40,000.00
  and supplies, computer and office equipment and supplies

- Goodwill and customer information       $60,000.00

## SCHEDULE 4(d)

### Litigation Matters

| Case Name | Docket No. | Court Location |
|---|---|---|
| LM INSURANCE CORPORATION v. SWIM SEVENTY, LLC A/K/A SWIM SEVENTY LLC | NNH-CV-17-6073902-S | New Haven JD |
| 8 WILLARD ROAD, LLC v. SWIM SEVENTY, LLC | NWH-CV-17-6002277-S | Norwalk Housing Session |
| CLARIS CONSTRUCTION, INC. v. SWIM SEVENTY, LLC | FST-CV-16-6028260-S | Stamford JD |
| CLARIS CONSTRUCTION, INC. v. SWIM SEVENTY, LLC | FST-CV-16-6028261-S | Stamford JD |
| BAUM, WINTHROP E. v. SWIM SEVENTY, LLC | FST-CV-15-6025127-S | Stamford JD |
| POLLEY, TERESA, A/K/A TERRI POLLEY v. SWIM SEVENTY, LLC | FST-CV-16-6028515-S | Stamford JD |
| CLARK, PHILIP v. SWIM SEVENTY, LLC | FST-CV-15-5014707-S | Stamford JD |

**EXHIBIT A**

**Bill of Sale**

## BILL OF SALE AND ASSIGNMENT AGREEMENT

THIS BILL OF SALE AND ASSIGNMENT AGREEMENT (this "Bill of Sale") is duly made, executed and delivered effective as of _____, 2017 (the "Closing Date"), by and between SWIM SEVENTY, LLC, a Connecticut limited liability company ("Seller"), and CONNECTICUT AQUATICS, LLC, a Connecticut limited liability company ("Buyer"), pursuant and subject to all of the representations, warranties, terms, covenants and conditions of that certain Asset Purchase Agreement by and between Buyer and Seller, dated as of _____, 2017 (the "Purchase Agreement"). All capitalized terms used but not defined herein shall have the same meanings assigned to them in the Purchase Agreement and in the Sale Order (hereafter defined).

### RECITALS

**WHEREAS,** on May 15, 2017 (the "Petition Date"), Seller filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), Case No. 17-50549; and

**WHEREAS,** Seller continues to operate as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code; and

**WHEREAS,** Buyer and Seller entered into the Purchase Agreement, pursuant to which Buyer agreed to purchase from Seller, and Seller agreed to sell to Buyer, the Acquired Assets; and

**WHEREAS,** the Purchase Agreement and the purchase and sale of the Acquired Assets were approved and authorized by the Bankruptcy Court pursuant to an order entered in the Bankruptcy Case on _____, 2017 (the "Sale Order"); and

**WHEREAS,** all conditions to the Closing were duly satisfied or waived pursuant to the Purchase Agreement, and the sale was consummated, transacted and closed as of the Closing Date set forth above;

**WHEREAS,** the Purchase Agreement provides that the parties will deliver to each other at Closing executed counterparts of an original bill of sale evidencing the sale, transfer and conveyance of the Assets to Buyer, and this Bill of Sale is the bill of sale provided for in the Purchase Agreement; and

**WHEREAS,** Seller, in consideration of the Purchase Price paid to Seller under the Purchase Agreement, the receipt and sufficiency of which is hereby acknowledged, has sold, transferred, conveyed and assigned and by these presents does sell, transfer, convey and assign unto Buyer, its successors and assigns, all of Seller's rights, title and interests in and to the Acquired Assets.

**NOW, THEREFORE,** pursuant to the foregoing recitals, and in consideration of the representations, warranties, terms, covenants and conditions contained in the Purchase Agreement and the payment by Buyer to Seller of the Purchase Price set forth in the Purchase Agreement, the receipt of which is hereby acknowledged, the parties hereto, intending to be legally bound by this Bill of Sale, hereby covenant, agree, promise, warrant, represent and declare as follows:

{00043085.10 }

## AGREEMENT

1.      Recitals. The background recitals are incorporated herein and made a part of this Bill of Sale by this reference.

2.      Sale and Transfer of Acquired Assets.  Effective as of the Closing Date, and pursuant to and in accordance with the Purchase Agreement and the Sale Order, Seller hereby sells, transfers, conveys and assigns to Buyer all of the Acquired Assets, free and clear of all Encumbrances pursuant to Section 363(b) and (f) of the Bankruptcy Code, and Buyer accepts such sale, transfer, conveyance and assignment of the Acquired Assets.

3.      Further Actions. Seller hereby covenants that, from time to time after delivery of this Bill of Sale, at Buyer's request and expense, and without further consideration, Seller will execute and deliver such instruments of conveyance and transfer and take such other actions as Buyer may reasonably request in order to more effectively sell, transfer, assign, deliver and vest in Buyer title to and possession ofthe Acquired Assets, and any and all other rights and interests pertaining thereto.

4.      Governing Law. This Bill of Sale shall be governed by and construed and enforced in accordance with the laws of the State of Connecticut and the Bankruptcy Code.

5.      Counterparts; Facsimiles.  This Bill of Sale may be executed in one or more counterparts, each of which shall constitute an original agreement but all of which together shall constitute one and the same instrument. The exchange of copies of this Bill of Sale and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery of this Bill of Sale as to the parties and may be used in lieu of the original Bill of Sale for all purposes.

6.      Inurement.  This Bill of Sale will inure to the benefit of Buyer, its successors, assigns, grantees, administrators, receivers and trustees, and will be binding upon Seller, its estate, creditors, direct and indirect equity holders, all parties-in-interest, affiliates, successors, assigns, grantees, any affected third parties, administrators, receivers and trustees, including, without limitation, any trustee or successor trustee appointed or elected in the Bankruptcy Case.

*[Signature Page Follows]*

{00043085.10 }

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale Agreement as of the date first above written.

**SELLER**

SWIM SEVENTY, LLC
a Connecticut limited liability company


By: _____
      Name:
      Title:

**BUYER**

CONNECTICUT AQUATICS, LLC,
a Connecticut limited liability company


By: _____
      Name: Russell Stidolph
      Title:  Manager

{00043085.10 }

## EXHIBIT B

**Procedures Order**

**(to be provided)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

———————————————————x
In re:                                          :
                                                :   CHAPTER 11
SWIM SEVENTY, LLC                               :
                                                :   CASE NO.  17-50549 (JAM)
                 Debtor.                         :
———————————————————x

**ORDER UNDER 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 2002, 6004, 6006
AND 9014 (A) SCHEDULING HEARING ON APPROVAL OF ASSET SALE, (B)
APPROVING BID PROTECTIONS AND (C) APPROVING FORM AND MANNER OF
NOTICE OF SALE AND BIDDING PROCEDURES**

This matter having come before the Court upon the motion dated November 14, 2017  (the

"Motion")[1] of Swim Seventy, LLC. (the "Debtor"), for an order (the "Bidding Procedures Order")

(A) scheduling a sale hearing authorizing the sale of certain assets, known as the Assets and as

described in the Motion (the "Assets") free and clear of all liens, claims, encumbrances, and other

interests (the "Sale"), pursuant to and as described in the Asset Purchase Agreement, dated as of

November 13, 2017 (the "Purchase Agreement"), between the Debtor and Connecticut Aquatics,

LLC (with its successors and assigns, "Proposed Purchaser"); (B) approving payment of the Bid

Protections as set forth in the Motion; and (C) approving form and manner of the notice of the sale

and form and manner of notice to parties to executory contracts and unexpired leases and the Court

having reviewed the Motion; and it appearing that notice of the Motion was good and sufficient

under the particular circumstances and that no other or further notice need be given; and the Court

having considered the arguments of counsel at the hearing held on November    , 2017  (the

"Hearing"); and it appearing that the relief requested in the Motion is in the best interest of the

Debtor, its estate and creditors and other parties in interest; and upon the record of the Hearing;

---

[1]    Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the Motion.

and after due deliberation thereon; and good cause appearing therefor, it is hereby FOUND AND DETERMINED THAT:

A.      The Debtor has articulated good and sufficient reasons for approving (i) the manner of notice of the Sale Motion; (ii) the Bid Protections; and (iii) the form of notice of the Sale to be distributed to creditors and other parties in interest, including prospective bidders and the Bidding Procedures.

B.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the return for the Assets.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Bids

1.      All bids must be submitted to counsel for the Debtor not later than 5:00 pm. (EST) on **December 11, 2017** (the "Bid Deadline").  A bid is a letter from a Qualified Bidder stating that (i) the Bidder offers to purchase the assets sought to be acquired upon the terms and conditions set forth in a copy of the Purchase Agreement, marked to show those amendments and modifications to said agreement, including price and terms, that the Qualified Bidder proposes (the "Topping Bid"); and (ii) the Bidder's offer is irrevocable until the conclusion of the Sale Hearing.  A Bidder shall accompany its bid with (i) a good faith deposit (the "Good Faith Deposit") in the amount of $10,000.00 (evidence of the transmission of the Good Faith Deposit by the Bid Deadline, such as a wire transfer confirmation or proof that wire transfer instructions have been given to the bidder's bank or financial institution, shall be sufficient to satisfy the Bid Deadline); and (ii) written evidence of a commitment for financing or other evidence of ability to consummate the applicable transaction.  A Bidder who timely satisfies the above requirements is a Qualified Bidder.

2

2.      The Debtor will consider a bid, received prior to the Bid Deadline, only if the bid: (a) provides for cash consideration of at least $140,000 and (b) does not request or entitle the bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  A bid received from a Qualified Bidder that meets the above requirements is a "Qualified Bid."  For purposes of the Bidding Procedures, the Purchase Agreement is a Qualified Bid and the Proposed Purchaser is a Qualified Bidder.  Upon receipt, the Debtor shall transmit all Qualified Bids to counsel for the Proposed Purchaser and counsel for all Qualified Bidders.

3.      The Debtor shall determine and shall notify the Proposed Purchaser, and all entities that have submitted Qualified Bids, by no later than 5:30 p.m. on December 11, 2017, if there is at least one Qualified Bid for the Assets other than the Qualified Bid of the Proposed Purchaser. If there is at least one Qualified Bid for the Assets other than the Qualified Bid of the Proposed Purchaser, the Debtor will conduct an auction (the "Auction") with respect to the Assets.  Prior to the commencement of the Auction, the Debtor may impose procedural bidding terms including but not limited to whether the Auction will be conducted by sealed or open bid, which bidding terms will be distributed to Qualified Bidders prior to the commencement of the Auction.  The Auction shall proceed until the Debtor announces to all bidders that it has determined no higher or better bids shall be forthcoming and its determination as to which bid constitutes the highest and best offer for the Assets ("Conclusion of the Auction").  Bidding shall occur thereafter in cash consideration increments of $10,000.00.  The Auction shall take place at 10:00 a.m. on **December 12, 2017** at the offices of Debtor's counsel, Neubert, Pepe & Monteith, P.C., 195 Church Street, New Haven, Connecticut 06510.  Upon the conclusion of the Auction, the Qualified Bidder with the highest or otherwise best bid (other than the Proposed Purchaser) shall submit an additional deposit to the Debtor in an amount sufficient to cause the Deposit to be ten percent (10%) of the

Bid. Upon the conclusion of the Auction, the Debtor shall submit the highest or otherwise best

bid for approval by the Bankruptcy Court. No additional bids shall be submitted or considered

after the conclusion of the Auction and the Court shall not consider or approve any bid submitted

after the conclusion of the Auction.

4.      Upon Bankruptcy Court approval of a bid by a Qualified Bidder or the Proposed

Purchaser (the "Successful Bidder") the Good Faith Deposits shall be returned to all other bidders.

## **Sale Hearing**

5.      A hearing (the "Sale Hearing") will be held before the undersigned United States

Bankruptcy Judge on **December 12, 2017**, at 2:00 p.m. in the United States Bankruptcy Court,

915 Lafayette Blvd, Bridgeport, Connecticut 06604 ("Bankruptcy Court"), to approve the Sale to

the Successful Bidder.

## **Notice**

6.      On or before November _____, 2017, the Debtor (or its agent) shall:

        a.      serve a copy of this Bidding Procedures Order (including, as an exhibit, the

Purchase Agreement) and the Notice of Assumption and Assignment of Executory Contracts and

Unexpired Leases ("Notice of Assumption and Assignment") by electronic mail or first-class mail,

postage prepaid, upon (i) the Office of the United States Trustee; (ii) counsel for Proposed

Purchaser; (iii) the entities known to the Debtor to have expressed a serious interest in pursuing an

acquisition transaction regarding the Debtor or its assets during the past twelve (12) months; (iv)

all entities known to have or to have asserted, any lien, claim, encumbrance or other property

interest in or upon the Assets; (v) the Debtor's 20 largest creditors; (vi) the Internal Revenue

Service; (vii) all entities who have filed a notice of appearance and request for service of papers in

this case; (viii) parties to the executory contracts and unexpired leases; and (ix) such other entities

as may be reasonably requested by Proposed Purchaser; and

        b.      cause a notice of sale to be published in The Norwalk Hour and online.

## Objections

**7.** Objections, if any, to the sale or the relief requested therein shall (a) be in writing, (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules (c) be filed with the Clerk of the court, and (d) be served upon (i) bankruptcy counsel for the Debtor, Neubert, Pepe & Monteith, P.C., 195 Church Street, 13th Floor, New Haven, Connecticut 06510 (Attn: Douglas S. Skalka); (ii) counsel to the Proposed Purchaser, Green & Sklarz LLC, 700 State Street, Suite 100, New Haven, Connecticut 06511 (Attn. Jeffrey M. Sklarz ); and (iii) the Office of the United States Trustee, 150 Court Street, New Haven, CT  06510 (Attn: Holley Claiborn) so that they are received no later than 5:00 p.m. (Eastern Time) on or before **December 8, 2017.**

8. The failure of any objecting person or entity receiving notice of the sale to file its objection timely will be a bar to its assertion, at the Sale Hearing or thereafter, of any objection to the Debtor's consummation and performance of the Purchase Agreement.

## Approvals

9. The Motion is Granted as set forth herein and specifically without limitation the Bidding Procedures, as more fully described above and in the Motion, are hereby approved and shall govern all proceedings relating to the Purchase Agreement and any overbids in this case.

10. The Bid Protections of up to $40,000 are hereby approved upon the terms and conditions set forth in the Motion.  The Bid Protections shall constitute an administrative expense under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

### **Miscellaneous**

11.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

12.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order.